08CV5320
JUDGE DOW
MAGISTRATE JUDGE NOLAN

AEE

# EXHIBIT A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

MARIO ALIANO,                                    )
on Behalf of Himself, and All Others             )
Similarly Situated,                              )
                                                 )
                          Plaintiff,             )
                                                 )          08CH33343
                                                 )
             v.                                  )
                                                 )
COMCAST OF CHICAGO, INC.;                        )
COMCAST OF ILLINOIS I, INC.;                     )
COMCAST OF ILLINOIS III, INC.;                   )
COMCAST OF ILLINOIS IV, INC.;                    )
COMCAST OF ILLINOIS/TEXAS, INC.;                 )
COMCAST MO EXPRESS OF ILLINOIS, INC.;            )
COMCAST OF NORTHERN ILLINOIS, INC.;              )
COMCAST SOUND COMMUNICATIONS, INC.;              )
COMCAST OF SOUTH CHICAGO, INC.;                  )
DOES 1-150,                                      )
                                                 )
                          Defendants.            )

### CLASS ACTION COMPLAINT

NOW COMES Plaintiff MARIO ALIANO ("Plaintiff"), on behalf of himself and all others

similarly situated, by and through counsel, and complains of Defendants, as follows:

1.      Speed and access are key features of high-speed Internet service. Defendant entities

(collectively, "Comcast" or "Defendant"), providers of Internet service to citizens of Illinois,

advertise, market, and sell their high-speed Internet service as providing "the ultimate broadband

experience."[1] and "unfettered access to all the content, services, and applications that the Internet

has to offer."[2] Comcast specifically represents that its "customers use the Internet for downloading

and uploading files...and thousands of other applications online," and that it does "not block access

---

[1] http://www.comcast.com/corporate/about/pressroom/productsandservices/productsandservices.html
(Verified as of 08/14/2008)

[2] http://www.comcast.com/Customers/Faq/FaqDetails.ashx?Id=4391 (Verified as of 08/14/2008)

to any Web site or applications, not block access to any web sites or online applications, including BitTorrent,"[3] a peer-to-peer file-sharing service ("P2P"). These and other similar statements by Comcast are patently false.

2.     Comcast intentionally blocks its customers from using P2P and other Internet applications, or otherwise impedes those applications, and it does so in a deceptive manner — by impersonating the computers of users attempting to share files. Comcast forges what are known as "reset packets," making it appear as if they are coming from one of the computers attempting to file-share. The forged reset packets tell the transmitting computer to stop its transmission.

3.     Comcast's customers were not told that Comcast would block or otherwise impede P2P file-sharing or any other Internet applications. On the contrary, they were assured by Comcast that they would receive "unfettered access"[4] to the Internet and its applications using "technology that enables you to experience faster connection speeds."[5] They never authorized Comcast to engage in practices contrary to these promises.

4.     As a result of Comcast's actions, Plaintiff and the other members of the Class paid for a promised service that they did not receive. Comcast's actions constitute deceptive trade practices under the Illinois Consumer Fraud and Deceptive Trade Practices Act ("Illinois Consumer Fraud Act"), including, but not limited to, the use or employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact, with intent that others rely upon the concealment, suppression, or omission of such

---

[3]http://www.comcast.com/Customers/FAQ/FaqDetails.ashx?Id=4390 (Verified as of 08/14/2008)

[4]http://www.comcast.com/Customers/Faq/FaqDetails.ashx?Id=4391 (Verified as of 08/14/2008)

[5]http://www.comcast.com/customers/faq/FaqDetails.ashx?ID=3695&fss=powerboost (verified as of 08/14/2008)

2

material fact, or the use or employment of any practice described in Section 2 of the Illinois

Deceptive Trade Practices Act, in the conduct of any trade or commerce, all of which actions by

statute are deemed unlawful whether any person has in fact been misled, deceived, or damaged

thereby. See, 815 ILCS 505/2. The Illinois Deceptive Trade Practices Act provides, among other

things, that a person engages in a deceptive trade practice when that person represents that the goods

or services are of a particular standard, quality, or grade or that goods are a particular style or model

if they are of another or advertises goods or services with intent not to sell them as advertised. See,

815 ILCS 510/2 (a)(7) and (9), respectively. As defined in the Illinois Consumer Fraud Act, trade

or commerce includes services such as Internet service. See, 815 ILCS 505/1. Accordingly,

Plaintiff, on behalf of himself, and those similarly situated, seeks all relief to which he is entitled,

including equitable relief, actual damages, punitive damages, attorney's fees and costs. See, 815

ILCS 505/10a(c).

## PARTIES TO THE ACTION

5.      Plaintiff, who is a resident of Illinois and is a "consumer" within the meaning of 815

ILLS 505/1(e), brings this action on behalf of himself and all those similarly situated. Plaintiff

subscribed to Comcast's high-speed Internet service for several months in year 2008.

6.      Comcast of Chicago, Inc., is an Illinois domestic corporation, whose registered agent,

C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and

is authorized to, and regularly does, conduct business within Illinois. Defendant's conduct occurred

in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

7.      Comcast of Illinois I, Inc., is an Illinois domestic corporation, whose registered agent,

C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and

3

is authorized to, and regularly does, conduct business within Illinois. Defendant's conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

8.      Comcast of Illinois III, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois. Defendant's conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

9.      Comcast of Illinois IV, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois. Defendant's conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

10.     Comcast of Illinois/Texas, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois. Defendant's conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

11.     Comcast MO Express of Illinois, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois. Defendant's conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

12.     Comcast of Northern Illinois, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois.

4

Defendant's conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

13.     Comcast Sound Communications, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois. Defendant's conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

14.     Comcast of South Chicago, Inc., is an Illinois domestic corporation, whose registered agent, C T Corporation System, has an address of 208 S. LaSalle Street, Suite 814, Chicago, IL 60604, and is authorized to, and regularly does, conduct business within Illinois. Defendant's conduct occurred in the course of trade and commerce within the meaning of 815 ILCS 505(1)(f).

15.     Defendants DOES 1 — 150 are persons or entities whose true names and affiliations are currently unknown to Plaintiff, and who therefore are sued under fictitious names. Plaintiff alleges that each of the fictitiously named Defendants is a domestic Illinois corporation. Plaintiff further alleges that each of the fictitiously named Defendants perpetrated some or all of the wrongful acts alleged herein. Plaintiff will amend this Complaint to state the true names and affiliations of Defendants DOES 1 — 150 as soon as such information is ascertained.

16.     The terms "Comcast" and "Defendants" as used herein, are defined to mean the Defendants named in Paragraphs 6 through 15 above.

17.     The causes of action alleged herein arise out of Comcast's high-speed Internet service, trade practices, and advertising strategies originating and employed in Illinois.

## JURISDICTION AND VENUE

18.     Jurisdiction over Comcast is proper under 735 ILCS 5/2-209(a)(1) (transaction of any business within this State), Section 2-209(a)(7) (making or performance of any contract or promise substantially connected with this State), Section 2-209(b)(4) (corporation doing business within this State), and Section 2-209(c) (any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States). 735 ILCS 5/2-209(a)(1), (a)(7), (b)(4), and (c).

19.     The Court has subject matter jurisdiction over the action pursuant to 815 ILCS 505/2 because, as explained more fully herein, Comcast's actions violate the Illinois consumer Fraud Act.

20.     Venue is proper within the County pursuant to 735 ILCS 5/2-101 because the transaction or some part thereof out of which the cause of action arose occurred within this County.

## FACTUAL ALLEGATIONS

A.     **Comcast Markets High Speeds and Unfettered Access to the Internet.**

21.     Comcast provides high-speed Internet services to the citizens of Illinois.

22.     Fast download and upload speeds and unfettered access are key features of Internet service. These features are especially important to consumers who download or upload large files.

23.     Comcast advertises, markets, and sells its high-speed Internet service on the express basis that it provides exceptionally fast and unfettered access to the Internet.

24.     Regarding the speed of its Internet access, Comcast represents, among other things, the following:

        a.     "Comcast High-Speed Internet offers the ultimate broadband experience."[6]

---

[6]http://www.comcast.com/corporate/about/pressroom/productsandservices/productsandservices.html
(Verified as of 08/14/2008)

     b.       Downloads at "crazy-fast speeds...in the blink of an eye."[7]

     c.       That its service "gives you lickety-split speed," is "way faster than DSL,"[8] is "blazing-fast,"[9] and is "lightning-fast."[10]

25.     Comcast represents that it provides the fastest speeds precisely for the applications that need it most — those that require large amounts of data to be uploaded and downloaded:

     a.       "[Y]ou'll be able to download faster, stream videos and music with fewer interruptions, and enjoy an amazing gaming experience."[11]

     b.       "This is the ideal service for those who frequently receive large files, watch video clips or movies, work from home, play online games or download photos."[12]

     c.       "Music, videos, online games - whenever you're downloading something big, PowerBoost kicks right in. Imagine you're downloading a 10 MB file, like three MP3 songs. It would take about 53 seconds with a 1.5 Mbps DSL connection. Compare that to 6.6 seconds with Comcast High-Speed Internet with PowerBoost."[13]

26.     Comcast further represents that it does not block or slow any Internet applications, but rather provides "unfettered access to all the . . . applications the Internet has to offer."[14]

---

[7] http://www.comcast.com/Corporate/Explore/Highspeedinternet.html?lid=2LearnHSI&pos=Nav (Verified as of 08/14/2008)

[8] http://www.comcast.com/Corporate/Explore/Highspeedinternet.html?lid=2LearnHSI&pos=Nav (Verified as of 08/14/2008)

[9] http://www.comcast.com/labs/ (Verified as of 08/14/2008)

[10] http://www.comcast.com/customers/faq/FaqDetails.ashx?ID=3607&fss=Lightning-Fast (Verified as of 08/14/2008)

[11] http://www.comcast.com/Corporate/Explore/Highspeedinternet.html?lid=2LearnHSI&pos=Nav (Verified as of 08/14/2008)

[12] http://www.comcast.com/Corporate/Explore/Highspeedinternet.html?lid=2LearnHSI&pos=Nav (Verified as of 08/14/2008)

[13] http://www.comcast.com/highspeedinternet/?fss=high%20speed%20internet

[14] http://www.comcast.com/Customers/Faq/FaqDetails.ashx?Id=4391 (Verified as of 08/14/2008)

7

**B.     Contrary to Its Representations, Comcast Blocks, Delays, Slows or Otherwise Impedes Applications That Require Large Data Transfers.**

27.     Contrary to its representations, Comcast blocks, delays, slows, or otherwise impedes Internet access for certain data-intensive Internet applications, such as P2P file sharing using BitTorrent, Gnutella, Lotus Notes, and possibly other applications.

28.     In early 2007, public interest organizations and consumers alleged that Comcast Corporation and its affiliates throughout the country (collectively, the "Comcast Entities") were engaging in these practices. The Comcast Entities denied the allegations and stuck to their original representations by claiming that they did not block or otherwise impede access to the Internet for any applications.

29.     Later in 2007, the Electronic Frontier Foundation and the Associated Press conducted sophisticated testing to determine whether users' access to high-speed Internet service was being blocked by the Comcast Entities for certain applications.[15]

30.     The testing led to shocking results. The Comcast Entities were blocking, delaying, slowing, or otherwise impeding Internet access for certain P2P applications, and were doing so in an outrageously deceptive manner, by impersonating the computers of users involved in file-sharing. The Comcast Entities were forging what are known as "reset packets," making it appear as if they were coming from one of the computers attempting to file-share. The reset packet instructed the recipient computer to stop transmitting data, thus causing the computers involved to stop uploading and downloading the shared files. (See, EFF Report, page 2, attached hereto as Exhibit 1).

---

[15] http://arstechnica.com/news.ars/post/20071128-eff-study-reveals-evidence-of-comcasts-bittorrent-interference.html (Verified as of 08/14/2008)

8

31. Even after these results were made public, the Comcast Entities continued to deny their actions by stating on the company's website that "[o]ur customers enjoy unfettered access to all the content, services, and applications that the Internet has to offer."[16] The Comcast Entities further state that they do not:

> [B]lock access to any Web site or applications, including BitTorrent. Our Customers use the Internet for downloading and uploading files, watching movies and videos, streaming music, sharing digital photos, accessing numerous peer-to-peer sites, VOIP applications like Vonage, and thousands of other applications online.[17]

32. Then, in public comments submitted to the Federal Communications Commission ("FCC") on February 12, 2008, the Comcast Entities finally admitted to "delaying" Internet access for certain P2P applications by generating forged reset packets that interrupted the connection between two computers attempting to share files. According to the Comcast Entities, their efforts to delay certain file-sharing applications were actually an attempt to prevent service degradation resulting from what they characterized as excessive bandwidth congestion created by these file-sharing applications. The Comcast Entities admitted that they had established pre-determined "congestion thresholds" that applied to the use of bandwidth in particular neighborhoods. When a Comcast subscriber in a particular neighborhood attempted to share a file in an area in which he or she had exceeded the "congestion threshold," the Comcast Entities would send a forged reset packet that would terminate the connection between that subscriber and the computer with whom he or she was attempting to share files.[18]

---

[16] http://www.comcast.com/Customers/Faq/FaqDetails.ashx?Id=4391 (Verified as of 08/14/2008)

[17] http://www.comcast.com/Customers/FAQ/FaqDetails.ashx?Id=4390 (Verified as of 08/14/2008)

[18] J. L. Casserly, H. C. Walker, J. W. Waz, K. A. Zachem, T. R. Nathan, Comments of Comcast Corporation, in the matter of Broadband Industry Practices, WC Docket No. 07-52, Feb. 12, 2008. http://fjallfoss.fcc.gov/prod/ecfs/retrieve.cgi?native_or_pdf=pdf&id_document=6519840991 (verified as of

33.     Notwithstanding that the Comcast Entities admitted these facts in their comments to the FCC, they never disclosed to their subscribers or potential subscribers that they blocked, delayed, slowed, or otherwise impeded Internet access.  On the contrary, the Comcast Entities continued to state that they provided unfettered access to the Internet using the fastest possible Internet connection.

34.     In an updated version of Comcast's Acceptable Use Policy ("AUP"), Comcast states that it "uses reasonable network management practices," which can include "temporarily delaying peer-to-peer sessions...during periods of high network congestion" and "limiting the number of peer-to-peer sessions during periods of high network congestion."[19]

35.     However, in an Order from the FCC, in year 2008, the FCC states, among other things, the following:

> a.     "Comcast's interference is far more invasive and widespread than the company first conceded."
>
> b.     "Comcast's practices are not minimally intrusive, as the company claims, but rather are invasive and have significant effects."
>
> c.     "The Commission found that Comcast monitors its customers' connections using deep packet inspection...Comcast opens its customers' mail because it wants to deliver mail not based on the address on the envelope but on the type of letter contained therein."
>
> d.     "The commission also found that Comcast's conduct affected Internet users on a widespread basis...up to three-quarters of all peer-to-peer connections in certain communities."

36.     During all relevant times, Comcast has engaged and continues to engage in Illinois in the very same practices described in paragraphs 24 through 35 above.

---

08/14/2008

[19] http://www6.comcast.net/terms/use/ (Verified as of 08/14/2008)

**C.** **Plaintiff and the Other Class Members Paid Comcast**
    **for Promised Services They Never Received.**

37.    Plaintiff has subscribed to Comcast's high-speed Internet since for several months in year 2008. He uses his Internet connection for a wide range of uses.

38.    Plaintiff has experienced severe speed and content limitations with regard to various protocols and applications that involve the transfer of large amounts of data.

39.    Plaintiff and the other Class members were part of the target audience to which Comcast directed the advertisements generally described in Paragraphs 25 through 27 above. Plaintiff and the other Class members viewed these and other advertisements in various media (television, print, radio, Internet, etc.) and relied on the representations contained therein to purchase monthly subscriptions to Comcast's high-speed Internet service.

40.    Plaintiff and the other Class members all subscribed to Comcast's high-speed Internet service at some point between September 9, 2005 and the present, and have paid all necessary subscription fees. Comcast never notified Plaintiff or the other Class members that it would block, delay, slow, or otherwise impede the P2P file-sharing or other Internet applications. On the contrary, both before and after they subscribed, Plaintiff and the other Class members were assured by Comcast that they would receive the fastest possible unfettered access to the Internet. Indeed, Plaintiff and the other Class members were inundated by Comcast with repeated representations that Comcast's high-speed Internet service provided fast and unfettered access to the Internet. Plaintiff and the other Class members never authorized Defendants to block, delay, slow, or otherwise impede their access to the Internet for any applications.

41.    Plaintiff and the other Class members have suffered damage as a result of Comcast's conduct as described above.

## CLASS ACTION ALLEGATIONS

42.    The action is brought as a class action pursuant to 735 ILCS 5/2-801, *et seq.* and is properly maintainable as a class action as set forth below.

### A.    Class Definition.

43.    The "Class" is defined as follows:

> All persons and entities in Illinois who purchased or maintained high-speed Internet service from Comcast at any time between September 9, 2005 and the date that the Court certifies the class.

Specifically excluded from the Class are Comcast and all of its subsidiaries, parents, and other affiliates, all officers, directors, and employees of these entities, and all legal representatives, heirs, and assigns of these entities. Also excluded are any judicial officers who preside over the action and any juror that participates in the lawsuit.

### B.    Impracticability of Joinder.

44.    The Class is composed of thousands of persons and entities in Illinois who purchased Comcast's high-speed Internet service. Accordingly, under 735 ILCS 5/2-801(1), joinder of all Class members would be impracticable. The disposition of Plaintiff's and the other Class members' claims in a class action will provide substantial benefits to the parties and the Court. The Class is ascertainable, and there is a well-defined community of interest in the questions of law or fact alleged since the rights of each Class member were infringed or violated in a similar fashion based upon Comcast's uniform conduct as described below.

### C.    Commonality.

45.    Defendants have acted in ways that affect all members of the proposed Class similarly. Questions of fact and law are common to each member of the Class pursuant to 735 ILCS 5/2-801(2). These common questions of law or fact include, but are not limited to, the following:

a.  whether Comcast's false statements that it would provide fast, unfettered access to the Internet, specifically with respect to applications that involve large transfers of data, constitute deception, fraud, false pretense, false promise or misrepresentation in connection with the sale of merchandise under the Illinois Consumer Fraud Act;

b.  whether Comcast's failure to inform its subscribers that it would not actually provide fast, unfettered access to the Internet, specifically with respect to applications that involve large transfers of data, constitute a concealment of a material fact in connection with the sale of merchandise under the Illinois Consumer Fraud Act;

c.  whether Comcast's failure to inform its subscribers that it would not actually provide fast, unfettered access to the Internet, specifically with respect to applications that involve large transfers of data, constitute an omission of a material fact in connection with the sale of merchandise under the Illinois Consumer Fraud Act; and

d.  whether Comcast's false statements that it would provide fast, unfettered access to the Internet, specifically with respect to applications that involve large transfers of data, constitute a representation that the goods or services were of a particular standard, quality, or grade or a representation that the goods were a particular style or model, when they were not or whether the foregoing statements made and disseminated by Comcast also constitute an advertisement of goods or services with intent not to sell them as advertised under the Illinois Consumer Fraud Act.

**D.  Predomination.**

46.  Questions of law and fact that are common the Plaintiff and the Class predominate over questions affecting only individual members pursuant to 735 ILCS 5/2-801(2). This action predominately concerns Defendants' actions, namely, Defendants' dissemination of advertisements that promised that their high-speed Internet services would be fast and unfettered, and Defendants' acts that undermined those promises. Defendants' conduct towards Plaintiff and the Class was the same in this regard. Further, the impact of Defendants' conduct on Plaintiff and the Class was also standard, that is, all Class members paid for services that they did not receive.

**E.    Fair and Adequate Representation.**

47.    Plaintiff is capable of fairly and adequately protecting the interests of the Class under

735 ILCS 5/2-801(3) because his claims are common to the Class and proof of those claims will

prove the claims of absent Class members. Plaintiff's interests are in harmony with the interests of

other members of the Class, and none of Plaintiff's interests are adverse to those of other Class

members. Plaintiff intends to pursue this litigation vigorously, and he selected counsel experienced

in complex litigation and class actions.

**F.    Fair and Efficient Method of Adjudication.**

48.    This class action is an appropriate method for the fair and efficient adjudication of

this action pursuant to 735 ILCS 5/2-801(4). Adjudication of this action on a class-wide basis would

secure economies of time, effort, and expense. Defendants' actions towards Plaintiff and the Class

members were similar, therefore, adjudication of the claims of each member of the Class would

result in thousands of needlessly repetitive trials. Further, the actual damages of each member of

the Class is so small as to make adjudication of each claim on an individual basis inefficient.

## COUNT I

## Misrepresentation of Merchandise

49.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through

48 as though fully restated herein.

50.    Under 815 ILCS 505/2 of the Illinois Consumer Fraud Act, it is an unlawful trade

practice to use "deception, fraud, false pretense, false promise, or misrepresentation . . ." in

connection with any sale of "merchandise" in Illinois. Under 815 ILCS 505/1 of the Illinois

Consumer Fraud Act, "merchandise" includes services such as Comcast's high-speed Internet

14

service.

51.     As set forth in paragraphs 1 through 48, Comcast repeatedly represented to Plaintiff and the other Class members that Comcast's high-speed Internet service provides the fastest and unfettered access to the Internet. Moreover, Comcast repeatedly represented to Plaintiff and the other Class members that Comcast's high-speed Internet service provides such fast and unfettered access for applications that involve large transfers of data. Indeed, Comcast represented that it actually increases the speed of its service ("technology that enables you to experience faster connection speeds while you are downloading and uploading large files to the Internet")[20] for such transfers. Comcast made these representations in connection with its sale of high-speed Internet service to Plaintiff and the other members of the Class.

52.     The foregoing representations, made and disseminated by Comcast, constitute deception, fraud, false pretense, false promise, and misrepresentation. Contrary to Comcast's statements, it intended to and did block, delay, slow, or otherwise impede its customers' access to the Internet and to P2P file-sharing and other Internet applications. As described above, Comcast achieved this result by, among other things, surreptitiously transmitting forged reset packets to users' computers that immediately terminated all file-sharing activities.

53.     Comcast intended for Plaintiff and the other Class members to rely on Comcast's untrue or misleading statements in subscribing to and paying for Comcast's high-speed Internet service. Comcast denied Plaintiff and the Class members the full value of the promised Internet service when it made untrue or misleading statements. Plaintiff and the other Class members have been damaged and have lost time, money or property as a result of Comcast's untrue or misleading

---

[20]http://www.comcast.com/customers/faq/FaqDetails.ashx?ID=3695&fss=powerboost (verified as of 08/14/2008)

representations.

54.     Comcast's scheme to hide its deceptive, intrusive, and damaging actions, which includes impersonating users and controlling their computers, was intentional, willful, malicious, and wanton.

55.     As a direct and proximate result of the aforesaid misrepresentation of merchandise, Plaintiff and the members of the Class have been damaged in an amount to be determined at trial.

56.     Accordingly, Comcast's actions are an unlawful trade practice under Section 505/2 of the Illinois Consumer Fraud Act, and Plaintiff and the other Class members are entitled to relief including, but not limited to, an injunction against the use of the unlawful trade practices, equitable relief, actual damages, reasonable attorney's fees, punitive damages, and any other relief that the Court deems proper.

## COUNT II

### Concealment of a Material Fact

57.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 56 as though fully restated herein.

58.     Under 815 ILCS 505/2 of the Illinois Consumer Fraud Act, it is an unlawful trade practice to conceal a material fact in connection with a sale of merchandise, including services, in Illinois.

59.     As set forth in paragraphs 1 through 56, Comcast repeatedly represented in advertisements and other communications to Plaintiff and the other Class members that its high-speed Internet subscribers would receive fast access to the Internet, and that the access would be unfettered. Moreover, Comcast repeatedly represented to Plaintiff and the other Class members

16

that Comcast's high-speed Internet service provides such fast and unfettered access for applications that involve large transfers of data. Indeed, Comcast represented that it actually increases the speed of its service ("technology that enables you to experience faster connection speeds while you are downloading and uploading large files to the Internet")[21] for such transfers. Comcast made these representations in connection with its sale of high-speed Internet service to Plaintiff and the other members of the Class. Comcast did not disclose that it blocked, delayed, slowed, or otherwise impeded access to the Internet.

60.     The foregoing conduct constitutes concealment of material facts by Comcast. Contrary to Comcast's statements, it intended to and did block, delay, slow, or otherwise impede its customers' access to the Internet and to P2P and other Internet applications. As described above, Comcast achieved this result by, among other things, surreptitiously transmitting forged reset packets to users' computers that immediately terminated all file-sharing activities. Comcast did not disclose these facts to Plaintiff or the Class members.

61.     Comcast intended for Plaintiff and the other Class members to rely on Comcast's conduct and its concealment of material facts concerning its blocking, delaying, slowing, or otherwise impeding Internet access, in subscribing to and paying for Comcast's high-speed Internet service. Comcast denied Plaintiff and the Class members the full value of the promised Internet service by this conduct. Plaintiff and the other Class members have been damaged as a result of Comcast's conduct.

62.     Comcast's scheme to hide its deceptive, intrusive, and damaging actions, which includes impersonating users and controlling their computers, was intentional, willful, malicious,

---

[21]http://www.comcast.com/customers/faq/FaqDetails.ashx?ID=3695&fss=powerboost (verified as of 08/14/2008)

and wanton.

63.     As a direct and proximate result of the aforesaid concealment of a material fact,

Plaintiff and the members of the Class have been damaged in an amount to be determined at trial.

64.     Accordingly, Plaintiff and the other Class members are entitled to relief including,

but not limited to, an injunction against the use of the unlawful trade practices, equitable relief,

actual damages, reasonable attorney's fees, punitive damages, and any other relief that the Court

deems proper.

## COUNT III

### Omission of a Material Fact

65.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through

64 as though fully restated herein.

66.     Section 505/2 of the Illinois Consumer Fraud Act prohibits the omission of any

material fact in connection with a sale of merchandise, including services, in Illinois.

67.     As set forth in paragraphs 1 through 64 above, Comcast repeatedly represented in

advertisements to Plaintiff and the other Class members that subscribers would receive extremely

fast and unfettered access to the Internet. Moreover, Comcast repeatedly represented to Plaintiff and

the other Class members that Comcast's high-speed Internet service provides fast and unfettered

access for applications that involve large transfers of data. Indeed, Comcast represented that it

actually increases the speed of its service ("technology that enables you to experience faster

connection speeds while you are downloading and uploading large files to the Internet")[22] for such

transfers. Comcast made these representations in connection with its sale of high-speed Internet

---

[22]http://www.comcast.com/customers/faq/FaqDetails.ashx?ID=3695&fss=powerboost (verified as of
08/14/2008)

18

service to Plaintiff and the other members of the Class. Comcast did not disclose that it blocked, delayed, slowed, or otherwise impeded access to the Internet.

68. The foregoing conduct constitutes omission of material facts by Comcast. Contrary to Comcast's statements, it intended to and did block, delay, slow, or otherwise impede its customers' access to the Internet and to P2P file-sharing and other Internet applications. As described above, Comcast achieved this result by, among other things, surreptitiously transmitting forged reset packets to users' computers that immediately terminated all file-sharing activities. Comcast did not disclose these facts to Plaintiff or the Class members.

69. Comcast intended for Plaintiff and the other Class members to rely on Comcast's conduct and its omission of material facts concerning its blocking, delaying, slowing, or otherwise impeding Internet access, in subscribing to and paying for Comcast's high-speed Internet service. Comcast denied Plaintiff and the Class members the full value of the promised Internet service by this conduct. Plaintiff and the other Class members have been damaged and have lost time, money or property as a result of Comcast's untrue or misleading representations.

70. Comcast's scheme to hide its deceptive, intrusive, and damaging actions, which includes impersonating users and controlling their computers, was intentional, willful, malicious, and wanton.

71. Plaintiff and the other Class members were injured when Comcast omitted these material facts, when in fact Comcast blocked, delayed, slowed, or otherwise impeded the access of certain applications to the Internet and therefore deprived Plaintiff and the other Class members of the services for which they paid.

19

72. As a direct and proximate result of the aforesaid omissions of material facts, Plaintiff and the members of the Class have been damaged in an amount to be determined at trial.

73. Accordingly, Plaintiff and the other Class members are entitled to relief including, but not limited to, an injunction against the use of the unlawful trade practices, equitable relief, actual damages, reasonable attorney's fees, punitive damages, and any other relief that the Court deems proper.

## COUNT IV

### Deceptive Advertising

74. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 73 as though Fully restated herein.

75. The Illinois Consumer Fraud Act prohibits the use or employment of any practice described in Section 2 of the Illinois Deceptive Trade Practices Act. *See* 815 ILCS 505/2. The Illinois Deceptive Trade Practices Act provides, among other things, that a person engages in a deceptive trade practice when that person represents that the goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another or advertises goods or services with intent not to sell them as advertised. *See* 815 ILCS 510/2 (a)(7) and (9), respectively.

76. As set forth in paragraphs 1 through 73, Comcast repeatedly represented in advertisements to Plaintiff and the other Class members that subscribers would receive extremely fast and unfettered access to the Internet. Moreover, Comcast repeatedly represented to Plaintiff and the other Class members that Comcast's high-speed Internet service provides such fast and unfettered access for applications that involve large transfers of data. Indeed, Comcast represented that it

actually increases the speed of its service ("technology that enables you to experience faster connection speeds while you are downloading and uploading large files to the Internet")[23] for such transfers. Comcast made these representations in connection with its sale of high-speed Internet service to Plaintiff and the other members of the Class.

77.     The foregoing statements, made and disseminated by Comcast, constitute representations that the goods or services were of a particular standard, quality, or grade or a representation that the goods were a particular style or model, when they were not. The foregoing statements made and disseminated by Comcast also constitute advertisements of goods or services with intent not to sell them as advertised. Contrary to Comcast's statements, it intended to and did black, delay, slow, or otherwise impede its customers' access to the Internet and to P2P file-sharing and other Internet applications. As described above, Comcast achieved this result by, among other things, surreptitiously transmitting forged reset packets to users' computers that immediately terminated all file-sharing activities.

78.     Comcast intended for Plaintiff and the other Class members to rely on Comcast's untrue or misleading statements in subscribing to and paying for Comcast's high-speed Internet service. Comcast denied Plaintiff and the Class members the full value of the promised Internet service when it made untrue or misleading statements. Accordingly, Plaintiff and the other Class members have been damaged and have lost time, money or property as a result of Comcast's untrue or misleading representations.

79.     This conduct constitutes deceptive advertising because speed and unfettered access to the Internet are the principal selling points of high-speed Internet service. Virtually all of

---

[23]http://www.comcast.com/customers/faq/FaqDetails.ashx?ID=3695&fss=powerboost (verified as of 08/14/2008)

Comcast's advertising addresses these two qualities.

80.     Plaintiff and the other Class Members were injured when Comcast, contrary to its advertisements, blocked, delayed, slowed, or otherwise impeded the access of certain applications to the Internet and therefore deprived Plaintiff and the other Class members of the services for which they paid.

81.     Comcast's scheme to hide its deceptive, intrusive, and damaging actions, which includes impersonating, users and controlling their computers, was intentional, willful, malicious, and wanton.

82.     As a direct and proximate result of the aforesaid deceptive advertising, Plaintiff and the members of the Class have been damaged in an amount to be determined at trial.

83.     Accordingly, Plaintiff and the other Class members are entitled to relief including, but not limited to, an injunction against the use of the unlawful trade practices, equitable relief, actual damages, reasonable attorney's fees, punitive damages, and any other relief that the Court deems proper.

## COUNT V

### Civil Conspiracy

84.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 83 as though fully restated herein.

85.     Defendants, each of them, conspired or agreed, as agents, each to the other, to engage in a conscious course of conduct to engage in deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact regarding the nature of the product they were selling and, in doing so, chose to commit unlawful acts in violation

22

of the Illinois Consumer Fraud Act, as set forth herein.

86.     Defendants did, in fact, commit such unlawful acts pursuant to the conspiracy and knowingly conspired to continue conduct to engage in deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact regarding the nature of the product they were selling in violation of the Illinois Consumer Fraud Act, as set forth herein. Defendants acting as agents, each to the other, engaged in a course of deceitful advertising and promotion so as to continue to engage in deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact regarding the nature of the product they were selling, while advertising and causing members of the consuming public, including Plaintiff and members of the Class herein, to be lured into a false sense of security believing that they were, among other things, receiving unfettered access to the Internet, when Defendants knew or should have known that they were not. Defendants engaged in a common plan and scheme to conceal this knowledge from the public and to conceal the nature of the product they were selling. Defendants, together with all other co-defendants herein, were engaged in a joint venture, enterprise or agency for the aforesaid purpose of deceit and by reason of their capacity as joint venturers, each in furtherance of the conspiracy as aforesaid, the heretofore mentioned acts, deeds, knowledge and omissions of said Defendants are imputable to all of the other Defendant joint tortfeasors, both jointly and severally.

87.     As a direct and proximate result of the aforesaid conspiracy, Plaintiff and the members of the Class have been damaged in an amount to be determined at trial.

88.     Accordingly, Plaintiff and the other Class members are entitled to relief including, but not limited to, an injunction against the use of the unlawful trade practices, equitable relief,

actual damages, reasonable attorney's fees, punitive damages, and any other relief that the Court

deems proper.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself, and all others similarly situated, and the

general public, respectfully requests that the Court:

1.      Certify the Class as defined in the Complaint;

2.      Order Comcast to notify each and every member of the Class of the pendency of the

claims in the action in order to give such persons an opportunity to seek relief;

3.      Enjoin Comcast from engaging in conduct that violates the Illinois Consumer Fraud

Act as defined in the Complaint;

4.      Enter a judgment in favor of Plaintiff and the Class on Counts I-V;

5.      Award compensatory damages to Plaintiff and the Class;

6.      Award Plaintiff and the Class punitive damages;

7.      Create a common fund comprised of all damages to Plaintiff and the Class;

8.      Award Class counsel attorney's fees pursuant to 815 ILCS 505/10a(c), the Common

Fund Doctrine, or any other applicable law;

9.      Award Plaintiff and the Class interest as prescribed by law;

10.     Award Plaintiff and the Class costs of the suit; and

11.     Award Plaintiff and the Class such other relief as the Court may deem to be just,

proper, and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of all issues in the Complaint triable to the jury.

24

Plaintiff MARIO ALIANO, individually, and on behalf of all others similarly situated,

By: _____

Thomas A. Zimmerman, Jr.
Zimmerman Law Offices, P.C.
100 West Monroe Street, Suite 1300
Chicago, Illinois 60603
(312) 440-0020
Firm ID 34418

Counsel for the Plaintiff and Class